**In re SIDER VENTURES & SERVICES CORP., Debtor.**

**Dorothy EISENBERG, Trustee of the Estate of Sider Ventures & Services, Inc., Plaintiff,**

**v.**

**TORONTO–DOMINION BANK, Defendant.**

**Bankruptcy No. 82 B 10478(PBA).**
**Adv. No. 82–6466–A.**

United States Bankruptcy Court,
S.D. New York.

July 15, 1983.

Shaw, Goldman, Licitra, Levine & Weinberg, P.C., Garden City, N.Y., for trustee; Karen Carter, Garden City, N.Y., of counsel.

Winthrop, Stimson, Putnam & Roberts, New York City, for Toronto Dominion Bank; Valerie A. Seiling, New York City, of counsel.

PRUDENCE B. ABRAM, Bankruptcy Judge:

This adversary proceeding was commenced on December 1, 1982 by Dorothy

Eisenberg, as Trustee for Sider Ventures & Services Corp. ("Sider") against the Toronto-Dominion Bank ("Bank"), a secured creditor of Sider, challenging the Bank's right to retain the full proceeds from the sale of its collateral.

Sider and the Bank entered into an Inventory Security Agreement on August 28, 1981, wherein the Bank advanced monies to Sider under a revolving line of credit in exchange for which the Bank took a security interest in steel owned by Sider. The Bank promptly perfected its security interest in the steel. On July 29, 1981 J.L. International, Ltd. ("J.L.") entered into a Guaranty Agreement with the Bank wherein J.L. became the guarantor of Sider's obligation to the Bank under the security agreement. Thereafter on March 15, 1982, Sider filed a petition for relief pursuant to Chapter 7 of the Bankruptcy Code. At that time, it is undisputed that $3,784,776.71 in principal was owing by Sider to the Bank. On August 26, 1982, the court authorized the Bank, as secured creditor, to sell the steel to J.L. for the sum of $4,059,960.40, which is the amount the Bank was due at that time by its calculations. J.L.'s purchase of the steel effectively satisfied its obligation to the Bank under its guaranty agreement.

As this case comes before the court now, the Trustee is alleging that, since the steel was only worth $2,000,000 [1] at the time of its sale to J.L., the excess over the value of the steel, i.e., the sum of $2,059,960.40, paid to the Bank by J.L. represents an unjust enrichment. The Trustee further alleges that this $2,059,960.40 included $303,552.23 in payments to which the Bank was not entitled, specifically (i) $108,046 in pre-petition interest on promissory notes left blank as to interest terms; (ii) $167,147.53 in post-petition interest and (iii) $28,358.70 representing a post-petition increase of the loan balance. In its answer, the Bank denied the Trustee's claims for relief, and on January 31, 1983 it filed a motion for summary judgment on the grounds that there is no genuine issue as to any material fact and that the Bank is entitled to a judgment as a matter of law. On March 24, 1983, the Trustee filed a cross-motion for summary judgment.

The issue presented here is whether the Bank was somehow unjustly enriched at the expense of the estate when it received $4,059,960.40 from the sale of its collateral to J.L., its guarantor.[2]

■ Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of the money or property of another against the fundamental principles of justice or equity and good conscience. 50 N.Y.Jur. § 5 (1966). Thus, there can be no restitution against one who has not received a benefit of money and property belonging to the claimant. *Alco Mfg. Corp. v. Neptune Meter Co.,* 20 A.D.2d 635, 246 N.Y.S.2d 265 (App.Div. 1st Dept. 1964) *aff'd* 16 N.Y.2d 777, 262 N.Y.S.2d 500, 209 N.E.2d 819 (1965). Nor can there be restitution against one where the claimant has not suffered some actual harm, *Nacional Financiera, S.A. v. Banco de Ponce,* 120 N.Y.S.2d 373, 417 (Sup.Ct.1953) *aff'd* 283 A.D. 939, 131 N.Y.S.2d 303 (App.Div. 1st Dept.1954).

■ Here, even if, as the Trustee contends and the court accepts for the purposes of this motion, the collateral was worth almost $2,000,000 less than the debt, it seems clear that the estate has suffered no harm. The estate had no equity in the property; it gave up nothing. The excess over the alleged fair market value paid by

---

1. When the Bank initially sought to sell the steel, the Trustee's position was that the steel was work *more* than the amount of the Bank's debt. Thus the Trustee has taken somewhat contradictory positions in this matter.

2. The trustee also seeks recovery on a preference theory. For purposes of this motion, this court adopts the plain meaning of preference, and addresses this issue in its determination of whether the Bank has been unjustly enriched at the expense of Sider. This court cannot consider payment to the Bank as a preferential payment within the meaning of § 547 of the Bankruptcy Code since the transfer in question was clearly not a pre-petition transfer. See § 547(b)(4) of the Bankruptcy Code.

J.L. to the Bank represented J.L.'s satisfaction of an obligation under its guaranty agreement with the Bank. This money did not come out of property of the estate. In fact, neither the Bank nor J.L. has sought to recoup from the estate the difference between the alleged fair market value of the collateral and the amount of the indebtedness by filing a proof of claim. Thus, a benefit was actually conferred upon this estate when J.L. chose to structure the transaction in the form that it did as its payment to the Bank reduced the amount of general claims against the estate by almost $2,000,000.

■ The Trustee alleges that J.L.'s payment to the Bank included over $300,000 on indebtedness it is contended is not owing by Sider to the Bank. The Trustee, however, fails to recognize that the question of actual indebtedness is irrelevant here because there is no claim by either the Bank or J.L. for the unsecured portion of indebtedness. The Bank may very well have secured from J.L. payment on account of disputed debts. However that J.L. failed to use as a defense to its guaranty any defense that Sider might have had regarding its liability to the Trustee on account of the loans is of no matter to the Trustee. There can be no doubt that if there had been a two-step transaction with the Bank having sold the steel to a third party for $2 million and having been paid by J.L. the difference under the guaranty that this estate could have had no interest in the amounts paid by J.L. on its guarantee to the Bank.

This court is of the opinion that the Bank received nothing more from the estate than its collateral. The unsecured creditors have not been hurt since there has been no depletion of the general estate. *In re Wolohan Lumber Co.*, 21 B.R. 747, 751 (Bkrtcy.S.D. Ohio 1982). For the foregoing reasons, this court must grant summary judgment in favor of the Bank and deny the Trustee's cross-motion.