In re SIDER VENTURES & SERVICES CORP., Debtor.

Dorothy EISENBERG, Trustee of the Estate of Sider Ventures & Services Corp., Plaintiff-Appellant,

v.

J.L. INTERNATIONAL, Defendant-Appellee.

No. 83 Civ. 8357–CSH.

United States District Court, S.D. New York.

Feb. 8, 1985.

Shaw, Goldman, Licitra, Levine & Weinberg, P.C., Garden City, N.Y., for plaintiff-appellant; Karen Carter Caso, Garden City, N.Y., of counsel.

Willkie, Farr & Gallagher, New York City, for defendant-appellee; Robert J. Kheel, Thomas Moers Mayer, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This is an appeal from an October 12, 1983, decision by Bankruptcy Judge Prudence B. Abram, reported as *In re Sider Ventures & Services Corp.*, 33 B.R. 708 (Bankr.S.D.N.Y.1983). Judge Abram granted summary judgment for appellee J.L. International ("JL") in trustee Dorothy Eisenberg's adversary action to avoid as a preference a pre-filing transfer of $100,000 by the debtor to JL. We affirm.

The facts, about which there is no dispute, are thoroughly set out in Judge Abram's opinion. Briefly, the debtor paid by check a $100,000 debt owed to JL. The check was drawn and mailed 91 days before the debtor filed its voluntary petition for bankruptcy, but it was not cashed until 87 days before the filing. As a consequence, it straddled the 90 day barrier for voidable preferences of 11 U.S.C. § 547(b)(4)(A).

The initial question presented to Judge Abram was whether for purposes of § 547(b) a transfer by check is "made" on the date of delivery or on the date of presentment. In an elegantly reasoned decision which draws upon both the statute's language and its history, she concluded that the date of delivery is the effective date. We restate her reasoning for the sake of present clarity but refer to the decision below for purposes of complete explanation.

Section 547(e) of the Bankruptcy Code governs the time at which a transfer is deemed to have been made for purposes of § 547(b), which governs voidable preferences. Under 11 U.S.C. § 547(e)(2)(A), if a transfer is "perfected" within 10 days of the date it "takes effect" between the parties, it is deemed "made" on the date it took effect. If the transfer is not perfected within 10 days, the transfer is made at the time of perfection. 11 U.S.C. § 547(e)(2)(B). Drawing upon the Uniform Commercial Code and common law, Judge Abram reasoned that a check "takes effect" upon delivery, for delivery of the check suspends the obligation for which the check is payment. 33 B.R. at 710–11. Because a check is "delivered" upon mailing, the date of mailing is the effective date. 33 B.R. at 710.

By statutory definition, a transfer is "perfected" when a creditor on a simple contract cannot acquire a judicial lien superior to the interest of the transferee. U.S.C. § 547(e)(1)(B). Judge Abram found that the bank's payment on the check accomplishes this result. 33 B.R. at 711. Thus, Judge Abram concluded, this transfer was perfected within 10 days of its effective date, thereby placing the date of transfer on the date of delivery, outside the 90 day limit. She declared it not voidable.

Judge Abram found support for this conclusion in the legislative history. As Judge Abram noted, the final Congressional word on the subject—a joint report to their respective deliberative bodies by the Bankruptcy Code's sponsors following compromise discussions between the two houses of Congress—contains the following statement of intent: "[P]ayment of a debt by means of a check is equivalent to a cash payment, unless the check is dishonored. Payment is considered to be made when the check is delivered for purposes of §§ 547(c)(1) and (2)." 124 Cong.Rec. H11097 (daily ed. Sept. 28, 1978) and 124 Cong.Rec. S17414 (daily ed. Oct. 6, 1978), *cited at* Appendix 3, Collier on Bankruptcy (15th ed. 1979), at IX–103, X–29, *quoted at* 33 B.R. at 712.

In a footnote Judge Abram also considered and found meritorious a defense which appellee asserted under § 547(c)(4). The defense sought to portray JL's subsequent guarantee of certain debt of the debtor as offsetting "new value." 33 B.R. at 712 n. 2.

Trustee Eisenberg raises several objections to this decision. They are considered sequentially below.

First, it is contended that although a check may be treated like cash—that is, effective upon delivery—if § 547(c)(1) or (2) defenses are asserted, payment by check must be viewed differently when a defense under § 547(c)(4) is raised. Neither of these subsections expressly refers to this issue. Instead, the argument is premised primarily upon appellant's reading of the legislative history. The initial House and Senate reports on § 547 stated that "[n]ormally a check is a credit transaction" but that for the purposes of § 547(c)(1) a check cashed within 30 days of delivery is to be considered "contemporaneous." H.R. No. 95–595, 95th Cong., 1st Sess. 373 (1977), *reprinted at* 1978 U.S.Code & Cong.Admin.News 5963, 6329; S.R. No. 95–989, 95th Cong., 2d Sess. 88, *reprinted at* 1978 U.S.Cong. & Admin.News 5787, 5874. The later Senate report copies the House report's language verbatim. Appellant argues that this language indicates that all checks are to be considered effective only when honored unless used in a § 547(c)(1) transfer.[1]

If this were the extent of the legislative history, we would be inclined to agree with the trustee. However, the argument ignores the later thoughts of the compromise committee quoted above and by Judge Abram. The quoted statement that "[p]ayment of a check is equivalent to a cash payment" is preceded in the Congressional record by the words "Contrary to the language contained in the House Report...." It thus appears that Congress's ultimate intention was to disavow the reference to checks as credit transactions on which the trustee relies.[2] It is true that, as evidenced in the quoted language, Congress expressly extended the rule only to § 547(c)(1) and (2), but the repudiating language seems to imply that the rule was meant to extend much more broadly. The trustee has stated no reason why this would not be true— that is, why for reasons of policy Congress might have wanted to deny cash treatment to check transactions outside § 547(c)(1) and (2)—nor are any self-evident. The restriction to § 547(c)(1) is understandable. As noted in footnote 1, *supra,* this subsection governs "contemporaneous exchanges." Subsection (c)(2), however, is much closer for these purposes to subsections (c)(3) through (c)(5) than (c)(1), since none of the former subsections involve contemporaneous exchanges.

In any event, this Congressional gloss on the statutory language must take a back seat to the language itself. As noted above, Judge Abram gave a careful analysis of the language's application to the facts at hand. The trustee attacks that analysis by raising an issue deemed conclusive by the many courts which have reached a conclusion purportedly at odds with Judge Abram's. *See, e.g., In re Advance Glove Manufacturing Co.,* 25 B.R. 521, 524–25 (Bankr.E.D.Mich.1982); *In re Supermarket Distributors Corp.,* 25 B.R. 63, 64–65 (Bankr.D.Mass.1982); *In re Sportsco, Inc.,* 12 B.R. 34, 36 (Bankr.D. Ariz.1981); *In re Duffy,* 3 B.R. 263, 265 (Bankr.S.D.N.Y.1980).

---

**1.** The reason for this exception is clear. Section 547(c)(1) is an exemption from voidability for contemporaneous exchanges for new value. It would pointlessly defeat the purpose of the exemption if the fortuity of payment by check rendered the exchange non-contemporaneous.

**2.** This is not, however, the only possible interpretation of this language. It was argued with some force, although we do not find the argument persuasive, in *In re Advance Glove Manufacturing Co.,* 25 B.R. 521 (Bankr.E.D.Mich. 1982) that the compromise committee intended only to contradict the reference to presentment within 30 days in the House report. On this theory, § 547(c)(1) remains the only subsection which accords cash treatment to checks. The reference to § 547(c)(2) is hypothesized to have been a mistake.

It is a settled issue of commercial law that until a check is paid no binding transfer of funds occurs. Until that time the drawee may withdraw or otherwise dispose of the funds in the account, thereby frustrating payment of the debt which the check was intended to satisfy. Noting this, those cases cited above correctly concluded, as did Judge Abram, that a transfer by check is not perfected until payment by the bank of the check. As explained below, these cases relied on this reasoning to find that the transfer did not take effect until the check was paid. Appellant cites these cases in arguing that because the check does not represent certain satisfaction of the obligation until payment, no transfer occurs until that point.

This argument ignores one aspect of the statutory scheme. Section 547(e) distinguishes, at least for some purposes, between the time of perfection of the transfer and the time the transfer is made. As noted above, § 547(e)(2)(B) equates these two dates if perfection occurs more than 10 days after the effective date of the transfer. If the transfer takes effect within 10 days of perfection, however, it is the effective date, not the date of perfection, on which the transfer is deemed made. 11 U.S.C. § 547(e)(2)(A). This issue was irrelevant in most of the cases cited by the trustee, for in each, with the exception of *Duffy*, the check was concededly not cashed within 10 days of delivery. The transfer was thus deemed to have occurred on the date of perfection. These cases thus reached only the question of when a check transfer is perfected, not when it takes effect. Because the instant check was cashed promptly, Judge Abram found it necessary to proceed to a consideration of the latter question. Her conclusion was that although a check transfer is not perfected—that is, the transfer is not entirely complete—until payment is made by the bank, the transfer "takes effect" immediately upon delivery.

While it is true that the obligation is not discharged until the check is honored, delivery of the check suspends the right to sue on the obligation and sets in motion the inevitably time-consuming process of transferring the drawer's property, in the form of bank funds, to the payee. Delivery of the check thus sets in motion the process of debt satisfaction, and for that reason Judge Abram concluded that the transfer "takes effect" on the day of delivery. 33 B.R. 710–711. *Accord, In re Blanton Smith Corp.*, 37 B.R. 303, 308 (Bankr.M.D.Tenn. 1984) (expressly); *In re Wadsworth Building Components, Inc.*, 711 F.2d 122, 123 (9th Cir.1983) (implicitly).[3] This holding harmonizes with daily experience in the use of checks. One considers a debt "paid," even if it is not legally satisfied, on the day on which a check in payment is delivered to one's creditor. It is only the unavoidably time-consuming nature of check delivery and presentment which prevents discharge of the debt from occurring immediately upon delivery of the check. Thus it is appropriate to hold that the transfer takes effect immediately upon delivery.

The trustee's final contention, that the concept of "perfection" in § 547(e) cannot appropriately be applied to checks, we find completely and correctly addressed by Judge Abram. 33 B.R. at 711.

Finding no voidable preference, we need not reach the question of whether a § 547(c)(4) defense of "new values" is available to JL. *See* 33 B.R. at 712 n. 2.

The judgment of the Bankruptcy Court is affirmed. The Clerk is directed to dismiss the appeal.

It is SO ORDERED.

---

3. In addition, several courts have concluded without necessarily following Judge Abram's line of reasoning that checks create transfers upon delivery. *In re Gold Coast Seed Co.*, 30 B.R. 551, 552 (Bankr.App. 9th Cir.1983); *In re Philadelphia Light Supply Co.*, 33 B.R. 734, 739 (Bankr.E.D.Penn.1983); *O'Neill v. Nestle Libbys P.R., Inc.*, 729 F.2d 35, 38 (1st Cir.1984). If this rule is observed without the express limitation of § 547(e)(2)(A) & (B)—that perfection must occur within 10 days—it leaves the system open to the type of abuse outlined in *Advance Glove, supra*, 25 B.R. at 528–29. We therefore find Judge Abram's analysis preferable to any *per se* rule.