In re **WINGSPREAD CORPORATION,** et al., **Debtors.**

Harold **YOUNG,** as Chapter 7 Trustee of **Champion Pants, Inc.,** Debtor, a subsidiary of **Wingspread Corporation,** Debtor, **Plaintiff,**

v.

**CONTINENTAL WORSTEDS, INC.,** Defendant.

Bankruptcy No. 87–B–10624.
Adv. No. 89–5829.

United States Bankruptcy Court,
S.D. New York.

Oct. 9, 1990.

Hahn & Hessen, New York City by T. Gorman, David A. Berger, and Maria A. Arnott, for trustee.

Mudge Rose Guthrie Alexander & Ferson, New York City by William J. Lowy, for Continental Worsteds.

## DECISION ON MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING BANKRUPTCY CODE § 547(c)(4)

TINA L. BROZMAN, Bankruptcy Judge.

As with much in life, timing here is everything. The precise question before me is whether the "transfer" contemplated by the subsequent advance defense to a preference contained in § 547(c)(4) of the Bankruptcy Code (11 U.S.C.A. § 547(c)(4) (West 1979)) (the Code) occurs on the date a debtor delivers a check to a creditor or on the date the check is honored. Continental Worsteds, Inc. (Continental) the defendant in this adversary proceeding, moves for partial summary judgment arguing that the date of delivery controls. Harold Young (the Trustee) as chapter 7 trustee of

Champion Pants, Inc. (the Debtor), responds that the date a check is honored governs when clearance occurs more than ten days after the check's delivery. After considering the legislative policy to be served by the Code's statutory exceptions to otherwise voidable preferences, I have concluded that if the parties intended a cash transaction a transfer occurs for purposes of § 547(c)(4) on the date the check is delivered, provided it is presented for payment within a commercially reasonable time and is honored.

The material facts underlying the summary judgment motion are wholly undisputed. On January 9, 1987, the Debtor negotiated a check (the Check) in the amount of $17,745.39 to Continental as payment (the Transfer) for certain goods sold and shipped to the Debtor as described in Continental's invoice dated August 11, 1986. On January 12, 1987, Continental deposited the Check into its bank account; the Check cleared on January 27, 1987. After receipt of the Check and within the preference period, Continental sold and shipped to the Debtor certain additional goods for the agreed upon price of $11,069.70 (the Alleged Subsequent Advance). On April 6, 1987, Wingspread Corporation and several of its wholly owned subsidiaries, including the Debtor, filed voluntary petitions for relief under Chapter 11 of the Code. On October 3, 1988, the Debtor's case was converted to a chapter 7 case with the Trustee being appointed the following day. The Trustee commenced this adversary proceeding seeking to avoid the Transfer pursuant to §§ 547(b) and 550(a) of the Code. As an affirmative defense[1] Continental asserts that the Alleged Subsequent Advance constitutes new value under § 547(c)(4) so that the Trustee may not avoid the Transfer to the extent of $11,069.70.

■ Section 547(c)(4) provides that a trustee may not avoid a transfer—

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such

---

1. For purposes of this motion, Continental concedes that all the statutory prerequisites of § 547(b) have been met and that the Transfer is subject to avoidance.

creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

This exemption has been characterized as a "subsequent advance rule" because a preferential transfer may only be set off against new value given after the preference has been received. *See Eisenberg v. O. Censor & Co. (In re Baumgold Bros. Inc.)*, 103 B.R. 436, 439 (Bankr.S.D.N.Y. 1989), *citing, inter alia, Waldschmidt v. Ranier (In re Fulghum Const. Corp.)*, 706 F.2d 171, 172 (6th Cir.), *cert. denied*, 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983); *accord Young v. Peter J. Saker, Inc. (In re Paula Saker & Co.)*, 53 B.R. 630, 633 (Bankr.S.D.N.Y.1985).

Maintaining that the Transfer occurred on January 27, the date the Check cleared, the Trustee argues that the "new value" represented by the Alleged Subsequent Advance was received before, not after, the transfer and is not available as a partial defense. Continental argues that since it gave new value in what, in the commercial world, one would understand to be after receipt of payment, I ought hold that, as a matter of law, § 547(c)(4) affords a partial defense to the Trustee's preference claim. Resolution of the dispute necessarily requires a determination of when the Transfer is deemed to have taken place.

At least two policy goals were intended to be furthered by the Code's preference subsections. First, in enacting § 547(b), Congress sought to "facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor." H.R. Rep. No. 595, 95th Cong., 1st Sess. 177–78 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6138. Distributive equality is preserved by requiring "[a]ny debtor that received a greater payment than others of his class ... to disgorge so that all may share equally." *Id.* Avoiding preferences under § 547(b) provides the mechanism through which disgorgement can be accomplished.

The second policy goal, which has been described as "rehabilitative in nature," is intended to encourage creditors to continue dealing with failing companies. *See* Ferguson, *Does Payment by Check Constitute a Transfer Upon Delivery or Payment?*, 64 Am.Bankr.L.J. 93, 103 (1990) *discussing O'Neill v. Nestle Libbys P.R., Inc.*, 729 F.2d 35, 37 (1st Cir.1984). This encouragement is offered by § 547(c)'s exceptions to otherwise voidable transfers, for "[w]ithout these exceptions, creditors would be reluctant to conduct business with a struggling enterprise for fear that any payment made by the debtor could later be avoided." *O'Neill*, 729 F.2d at 37. The *O'Neill* court found that the debtor's prospects for rehabilitation are improved by "insulating normal business transactions from the trustee's avoidance power." *Id.* Although *O'Neill* dealt with the ordinary course of business exception found in § 547(c)(2), a long line of cases has acknowledged that § 547(c)(4) likewise serves to encourage creditors by leaving undisturbed their normal business relations with the debtor. *See, e.g., Kroh Bros. Dev. Co. v. Aoki Landscape Maintenance (In re Kroh Bros. Dev. Co.)*, 104 B.R. 182, 188 (Bankr. W.D.Mo.1989), *aff'd*, 114 B.R. 658 (W.D. Mo.1990), *quoting, Bergquist v. Anderson-Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.)*, 850 F.2d 1275, 1280 (8th Cir.1988); *see also Remes v. Acme Carton Corp. (In re Fasano/Harriss Pie Co.)*, 43 B.R. 871, 876 (Bankr.W.D.Mich. 1984), *aff'd*, 71 B.R. 287 (W.D.Mich.1987); *Begier v. Krain Outdoor Advertising, Inc. (In re American Int'l Airways, Inc.)*, 68 B.R. 326, 335–36 (Bankr.E.D.Pa.1986); *Chaitman v. Paisano Automotive Liquids, Inc. (In re Almarc Mfg. Inc.)*, 62 B.R. 684, 687–88 (Bankr.N.D.Ill.1986); *In re Paula Saker & Co.*, 53 B.R. at 633, *citing, Bernstein v. Alpha Assoc., Inc. (In re Frigitemp Corp.)*, 34 B.R. 1000, 1010–11 (S.D.N.Y.1983), *aff'd*, 753 F.2d 230 (2d Cir.1985); *accord* Thompson, *The Effective Date of Transfers by Check Under Section 547(c)(4) of the Bankruptcy Code: In Support of the Delivery Rule*, 95 Com.

L.J. 217, 219–20 (1990) (referred to below as *Thompson* ).

■ Congress recognized that normal business relations between debtors and creditors often involved the use of checks to transfer funds. Thus, the initial House and Senate Reports discussing § 547(c)(1) contain identical language

> Normally a check is a credit transaction. However, for the purposes of this paragraph, a transfer involving a check is considered to be "intended to be contemporaneous," and if the check is presented for payment in the normal course of affairs, which the Uniform Commercial Code specifies as 30 days, U.C.C. § 3–503(2)(a), that will amount to a transfer that is "in fact substantially contemporaneous." H.R.Rep. No. 595, 95th Cong., 1st Sess. 373 (1977); S.Rep. No. 989, 95 Cong., 2d Sess. 88 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5874, 6329.

In the legislative debates on the Bankruptcy Reform Act of 1978, a compromise committee modified its view of the nature of a check payment by stating

> Contrary to language contained in the House Report, payment of a debt by means of a check is equivalent to a cash payment, unless the check is dishonored. Payment is considered to be made when the check is delivered for purposes of §§ 547(c)(1) and (2). 124 Cong.Rec. H11,-097 (daily ed. Sept. 28, 1978) and 124 Cong.Rec. S17,414 (daily ed. Oct. 6, 1978) *reprinted in* Appendix 3 L. King, *Collier on Bankruptcy,* at IX–103, X–29 (15th ed. 1990).

I am persuaded by these comments and the decisions of several courts applying the exemptions that for purposes of §§ 547(c)(1) and (c)(2), a transfer by check occurs on the date of delivery, provided that the check is presented within approximately 30 days and not dishonored. *See, e.g., Scherling v. Texaco Int'l Trade, Inc. (In re Transpacific Carriers Corp.*), 50 B.R. 649, 651 (Bankr.S.D.N.Y.1985), *aff'd,*

113 B.R. 139 (S.D.N.Y.1990); *Braniff Airways v. Midwest Corp.,* 873 F.2d 805, 806–08 (5th Cir.), *reh'g denied,* 1989 WL 47385, 1989 U.S. App. Lexis 9481 (5th Cir.1989); *Durham v. Smith Metal and Iron Co. (In re Continental Commodities, Inc.*), 841 F.2d 527, 529–30 (4th Cir.1988); *Bernstein v. RJL Leasing (In re White River Corp.*), 799 F.2d 631, 633–34 (10th Cir.1986); *O'Neill v. Nestle Libbys,* 729 F.2d at 37–38; 4 L. King, *Collier on Bankruptcy,* ¶ 547.16[4] (15th ed. 1990).

■ Because § 547(c)(4) is nowhere mentioned in the pertinent legislative history discussing payment by check, one could surmise that Congress intended a different rule for that subsection. But I agree with those cases reasoning that for purposes of § 547(c)(4), as for §§ 547(c)(1) and (c)(2), the transfer occurs on the date the check is delivered to the creditor rather than the date it is honored so long as the parties intended a cash transaction.[2] *See In re Kroh Bros.,* 114 B.R. at 660–61; *In re Fasano/Harriss,* 71 B.R. at 290–91; *Best Corp. v. Gibson Chemical & Oil Corp.,* 73 B.R. 69, 71 (Bankr.D.Conn.1987); *In re American Int'l Airways,* 68 B.R. at 336; *In re Almarc Mfg.,* 62 B.R. at 688–89; *accord In re Plaza Hotel Corp.,* 111 B.R. 882 (Bankr.E.D.Ca.1990) (discussing intent of parties); *but cf. Gold Coast Seed Co. v. Spokane Seed Co. (In re Gold Coast Seed Co.*), 30 B.R. 551 (9th Cir.BAP 1983) *and Newton Exploration Co. v. Fredman (In re Nucorp Energy, Inc.*), 92 B.R. 416 (9th Cir.BAP 1988) *with McClendon v. Cal–Wood Door (In re Wadsworth Bldg. Components Inc.*), 711 F.2d 122 (9th Cir. 1983) *and Kupetz v. Elaine Monroe Assoc., Inc. (In re Wolf & Vine*), 825 F.2d 197 (9th Cir.1987). That Congress mentioned in reports two subsections of § 547(c) does not necessarily imply that it deliberately excluded another. Rather, "[w]here neither the statute nor legislative history clearly indicate Congressional intent, a court should be guided by policy considerations underlying the paragraphs

---

2. Intent may be called into question, for instance, where post-dated checks are used. *See, e.g., Johnson v. Barnhill (In re Antweil*), 111

B.R. 337 (D.N.M.1990) (discussing post-dated checks and when they might negate intent to treat a check as cash).

in question." *Fasano/Harriss*, 43 B.R. at 876. As I have noted earlier, the common aim of §§ 547(c)(4), (c)(1) and (c)(2) is to encourage creditors to continue dealing with troubled businesses by protecting certain ordinary business transactions.

The district court for the Southern District of New York has found no reason why payment by check under § 547(c)(4) should be treated any differently than under §§ 547(c)(1) and (c)(2). *See Eisenberg v. J.L. Int'l. (In re Sider Ventures & Services Corp.)*, 47 B.R. 406, 408 (S.D.N.Y.1985) (dicta), *aff'g*, 33 B.R. 708 (Bankr.S.D.N.Y. 1983). The *Sider* court noted that Congress's subsequent comments on check transactions seemed to imply that the "check as cash rule" was meant to be broadly applied under § 547(c). 47 B.R. at 408. Similarly, Professor Vern Countryman, an advisor to the staffs of the Senate and House Judiciary Committees in drafting the Code, posits that notwithstanding the legislative silence surrounding § 547(c)(4) "the creditor who is encouraged by receipt of the check to extend new unsecured credit without waiting for the check to clear may invoke section 547(c)(4) to apply the credit against the trustee's recovery of an earlier preference." Countryman, *The Concept of a Voidable Preference in Bankruptcy*, 38 Vand.L.Rev. 713, 789 (1985).

A contrary holding would defeat rather than promote the policy goal of § 547(c)(4), discouraging creditors from continuing to extend unsecured credit, and might well force them to wait until a check cleared before shipping additional merchandise to a financially unstable business. Such delay could precipitate the business's slide into bankruptcy, particularly if its normal trade experience was to receive goods upon delivery of a check. Moreover, as the court in *Almarc* explained

> [t]here is no policy reason why a creditor who waits for a check to clear before shipping should get the benefit of the § 547(c)(4) setoff while a creditor who, doing what most business people do, ships on receipt of a check, should be denied the setoff. In both cases, the check ultimately clears and the estate is diminished to that extent. More importantly in both situations the allowance of the setoff does not injure the estate because, as explained earlier, the estate is enriched to the extent of the goods shipped which is, of course, the exact amount set off. 62 B.R. at 688 (citation omitted).

The Trustee grounds his stance on the bankruptcy court's decision in *Sider* and its affirmance by the district court.[3] In *Sider*, the debtor mailed a check to a creditor on December 14, 1986, the 91st day prior to the filing of its petition; the check subsequently cleared the debtor's bank account on December 18, the 87th day prepetition. The issue before the bankruptcy court was whether the date of delivery[4] or the date of clearance controls in determining when a transfer occurs for purposes of § 547(b). In answering this question, Judge Abram looked to § 547(e)(2)(A) which provides that a transfer is made "at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time." She reasoned that the transfer took "effect" on the delivery date and was "perfected" on the clearance date. 33 B.R. at 711. Because the check cleared within ten days of its delivery, the transfer related back to the date of delivery, which was

---

**3.** The Trustee also cites *Arnason v. Satin America Corp. (In re J.I.C. Installations, Inc.)*, 109 B.R. 43 (Bankr.S.D.N.Y.1989), another case addressing transfers under § 547(b), in which the court was "bound to follow" the district court's affirmance in *Sider*. *Id.* at 47.

**4.** The debtor had placed a check in the mail on the 91st day prior to filing which "presumably" could not have been received by the creditor until sometime within the 90 day preference period. *In re Sider*, 33 B.R. at 709. Judge Abram determined that the date a check is placed in the mail, rather than the date of receipt, is the date it is deemed delivered under § 547(b). *Id.* at 710. Although the parties before me are uncertain whether the Check was mailed or hand delivered, the question is of no moment since the Trustee has stipulated that the Alleged New Advance was made after the Check was actually received by Continental.

more than ninety days prior to the debtor's bankruptcy.

Building on *Sider,* the Trustee contends that because the Check did not clear until fifteen days after it was delivered, the relation back provisions of § 547(e)(2)(A) do not apply. Under such circumstances, the argument runs, one must look to § 547(e)(2)(B), which dictates that a transfer is made "at the time such transfer is perfected, if such transfer is perfected after such 10 days." But the Trustee's reliance on *Sider* is misplaced, for *Sider* dealt with the date of transfer under § 547(b), not § 547(c)(4). And here, the parties have stipulated that the prerequisites of § 547(b) have been satisfied.

Congress set entirely different goals in enacting §§ 547(b) and (c)(4) which courts have found to "require different interpretations of when funds pass by check." *Boatman v. Connecticut Brass & Copper (In re Bristol Indus.),* 117 B.R. 44 (D.Conn. 1989). The *Bristol* court considered whether the existence of two rules was unduly cumbersome and rejected the notion out of hand, saying that "[a]pplying different rules for check transfers under subsection 547(b) and subsection 547(c) does not appear to create any particular difficulty." *Bristol* is not alone in recognizing the two subsections require differing analysis. *In re Kroh Bros.,* 104 B.R. at 188–89; *Best Corp. v. Gibson Chemical,* 73 B.R. at 71; *In re Fasano/Harriss,* 71 B.R. at 291; *In re Almarc,* 62 B.R. at 687–88; *see also* Wishnia, *Honoring Thy Check—Irrelevant to Preference Analysis in the Sixth Circuit,* Norton Bankr.L. Adviser 3, 4 (Sept. 1990); *Thompson,* 95 Com.L.J.at 228–29; Note, *Transfer by Check: The 90–Day Rule of Preference Recovery Under § 547(b) of the Bankruptcy Code,* 1987 Duke L.Rev. 712, 724–25. *Contra, Official Unsecured Creditors' Comm. v. The Shaler Corp. (In re Belknap, Inc.),* 909 F.2d 879, 883 (6th Cir.1990) (advocating that the date of delivery should control under both § 547(b) and § 547(c)) *citing* Ellis, *Preferential Payments by Check: At What Point Is Payment Made?,* 16 U.C.C.L.J. 46, 57 (1983).

Nor does the dicta in *Sider* concerning § 547(c)(4) afford the Trustee any support. In a footnote, Judge Abram noted that even if the transfer in her case had occurred within 90 days, recovery would have been denied because § 547(c)(4) offered the creditor a meritorious defense to the alleged preference. 33 B.R. at 712, n. 2. She concluded that the creditor gave new value in the form of its guarantee of certain loans made by a lender to the debtor within the preference period. Finding that the loans, and thus the creditor's corresponding guarantee, were made after the check was debited to the debtor's bank account, Judge Abram commented that § 547(c)(4) would have precluded avoidance of the transfer. Because there was no question that the new value was given after the check cleared, the issue of date of delivery or date of honor did not arise in Judge Abram's § 547(c)(4) analysis. On appeal, the district expressly declined to discuss whether the creditor could avail itself of the new value defense. 47 B.R. at 409.

Here, the parties have admitted that the Debtor offered and Continental accepted the check as cash, therefore shipping new goods. Because the Check was presented within fifteen days of delivery and was ultimately honored, Continental's motion for partial summary judgment is granted. Settle order consistent with this decision.