906 F.2d 942
 111 A.L.R.Fed. 815, 59 USLW 2085, 23
Collier Bankr.Cas.2d 197,
Bankr. L. Rep. P 73,501
 In re KUMAR BAVISHI & ASSOCIATES. (Two Cases)
Frederick L. REIGLE, Esq., Trustee for Kumar Bavishi &
Associates, Appellant,
v.
S.S. MAHAJAN, Appellee.
Frederick L. REIGLE, Esq., Trustee for Kumar Bavishi &
Associates, Appellant,
v.
R.K. MAHAJAN, Patel Manjula, S.S. Mahajan, Appellees.
 Nos. 89-2068, 89-2069.
 United States Court of Appeals,
Third Circuit.
 Argued May 24, 1990.
Decided June 26, 1990.
Rehearing and Rehearing In Banc
Denied July 26, 1990.
 
 Kenneth F. Carobus (argued), Morris & Adelman, P.C., Philadelphia, Pa., for appellant Frederick Reigle, Trustee for the Bankruptcy Estate of Kumar Bavishi & Assoc.
 Mark G. Yoder (argued), Bingaman, Hess, Coblentz & Bell, Reading, Pa., for appellees R.K. Mahajan and S.S. Mahajan.
 Before COWEN, NYGAARD, and ALDISERT, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 In these consolidated appeals from the district court's judgment that affirmed appeals from the bankruptcy court, we must decide if the appellant, who is the trustee of Kumar Bavishi & Associates, debtor, could properly set aside alleged preferential transfers to R.K. Mahajan and S.S. Mahajan, appellees. The bankruptcy judge determined that the trustee did not establish the right to avoid the transfers because the debtor had received new value in a contemporaneous exchange in the form of a loan guarantee. The trustee appealed and the district court affirmed. The trustee has now appealed to us and we affirm.
 
 
 2
 Jurisdiction in the trial court was proper based on 28 U.S.C. Sec. 158(a). We have jurisdiction pursuant to 28 U.S.C. Secs. 158(d), 1291. This appeal was timely filed.
 
 
 3
 This appeal turns on whether the guarantee by appellees constitutes "new value." The determination of "new value" is a mixed question of law and fact. In re Spada, 903 F.2d 971, 975 (3d Cir.1990). "[W]e exercise plenary review of the legal standard applied by the district and bankruptcy courts, but review the latter court's guidelines of fact on a clearly erroneous standard." Id. (quoting In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 147 (3d Cir.1986) (quoting Universal Minerals Inc. v. C.A. Hughes & Co., 669 F.2d 98, 103 n. 6 (3d Cir.1981))).
 
 I.
 
 4
 R.K. Mahajan and his brother, S.S. Mahajan, were limited partners in the debtor partnership, Kumar Bavishi & Associates. The parties stipulated that both brothers were creditors of the debtor. App. at 502, 509. For convenience we will refer to both brothers as the "appellee" in this opinion. In April 1984, the debtor partnership was in desperate need of additional operating funds, and applied to a lending institution for a $200,000 loan. The lending institution, Salween Financial, declined to grant the loan solely on the credit of the debtor and its general partner, and insisted upon receiving the personal guarantees of other parties for the full amount of the loan.
 
 
 5
 Appellee and the other limited partners were under no legal obligation to provide their personal guarantees. However, to induce appellee to guarantee payment of the proposed loan from Salween Financial to the partnership, the general partner, on behalf of the partnership, agreed to pay off a portion of the partnership's pre-existing debt to appellee, in an amount equal to appellee's estimated share of the exposure on the personal guarantee of the $200,000 loan. Because six of the limited partners, including the appellee, were to become guarantors of the $200,000 loan, it was agreed that appellee's exposure would probably not exceed $33,333. Accordingly, immediately upon consummation of the loan transaction, $33,333 of appellee's pre-existing debt was repaid in exchange for appellee's personal guarantee. The other limited partners received nothing for their guarantees. It is the payment by the partnership of the $33,000 debt owed appellee that is challenged by the trustee as a preferential transfer and defended by the appellee as a "new value" exception to the preferential transfer concept.
 
 
 6
 Debtor petitioned for reorganization under Chapter 11 on June 14, 1984, about two months after the payment to the Mahajans. The guarantors were then sued by Salween Financial and forced to satisfy the $200,000 loan. Appellees paid approximately $41,000 each.
 
 
 7
 Thereafter the Chapter 11 proceeding was converted into a Chapter 7 liquidation. The debtor's trustee instituted adversary proceedings against R.K. Mahajan and S.S. Mahajan, to set aside the alleged $33,000 preferential transfers under 11 U.S.C. Sec. 547. Alternatively, the trustee challenged the transfers as fraudulent under 11 U.S.C. Sec. 548 and as a violation of the Pennsylvania Limited Partnership Act, 59 Pa.C.S.A. Sec. 527 (repealed 1988).
 
 
 8
 The bankruptcy judge dismissed the section 548 claim on the grounds that the trustee failed to prove that the challenged transaction had been accomplished with intent to hinder, delay or defraud creditors. The trustee has not challenged that ruling. The bankruptcy judge further ruled that, although the challenged transfer had occurred within the preference period, the appellee had met his burden of proving that the transaction fell within the exception stated in section 547(c), in that the defendant had given new value in contemporaneous exchange for the challenged transfer. Although the bankruptcy judge did not address the state law claim under the Limited Partnership Act, the district court did. The District court stated that the "new value" that constituted a defense to the preferential transfer action also constituted a defense to the fraudulent transfer action of the Pennsylvania Uniform Limited Partnership Act.
 
 II.
 
 9
 The general rule regarding transfers made prior to bankruptcy is contained in 11 U.S.C. Sec. 547(b)(4)(A):
 
 
 10
 the trustee may avoid any transfer of an interest of the debtor in property--(4) made--(A) on or within 90 days before the date of filing of the petition....
 
 
 11
 The trustee is plainly entitled to avoid the transfer by debtor to appellees as a preferential transfer because it was made within 90 days of the bankruptcy petition filing, unless the transfer falls within one of the exceptions provided in section 547(c). Section 547(c)(1) provides that the trustee may not avoid a transfer:
 
 
 12
 (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
 
 
 13
 (B) in fact, a substantial contemporaneous exchange....
 
 
 14
 Section 547(c)(4) provides that the trustee may not avoid the payment of funds when "after such transfer, such creditor gave new value to or for the benefit of the debtor...."
 
 
 15
 For purposes of both of these exceptions, section 547(a)(2) defines "new value" as "money or money's worth in goods, services or new credit...." In our view, the district court did not err in concluding that the facts here came within the "new value" exception discussed hereinafter in detail.
 
 III.
 
 16
 As a preliminary matter, we are convinced that the $33,000 payments were preferential transfers under 11 U.S.C. Sec. 547(b). Even if the issue of whether this transfer was preferential had been preserved for appeal, appellee would not have succeeded. We reject appellee's argument that the transfer was not a transfer of an interest of the debtor in property. Similarly, we are not persuaded that the funds borrowed by Salween were earmarked for payment to appellee. The record does not reflect the existence of an agreement between Salween and the debtor that the funds be used to pay a specified antecedent debt as required by In re Bohlen Enters., Ltd., 859 F.2d 561, 566 (8th Cir.1988).
 
 
 17
 Accordingly, we must decide whether the transfer was for "new value," such that the exchange satisfied the requirements of 11 U.S.C. Sec. 547(c)(1) or 11 U.S.C. Sec. 547(c)(4). We hold it was a transfer for new value that satisfied the statutory requirements.
 
 IV.
 
 18
 Appellee contends that the $33,333 transfer was part of a contemporaneous exchange in which new value was given in the form of a personal guarantee of the $200,000 loan to the partnership. 11 U.S.C. Sec. 547(c)(1). He further argues that when, after bankruptcy, he was required to pay the lending institution more than $40,000 on account of the personal guarantee, he gave new value for the benefit of the debtor "after such transfer," within the meaning of section 547(c)(4). For either or both of these reasons, appellee argues the trustee may not avoid the transfer.
 
 
 19
 The trustee responds with an extremely sophisticated argument: that appellee's personal guarantee did not enhance the value of Debtor's estate and that somehow this prevents the guarantee from constituting "new value"; that the money lent by Salween was mirrored by an obligation to the lender to be paid as a debt; that only Salween benefitted from the guarantee as increased collateral for this loan; and that payment to appellee depleted Debtor's estate to the detriment of other creditors. Further, trustee argues that the payment of $41,000 by appellee to satisfy the guarantee does not constitute new value because payment was made post-petition. See In re Bellanca Aircraft Corp., 56 B.R. 339 (Bankr.D.Minn.1985), aff'd in part, and remanded in part, 850 F.2d 1275 (8th Cir.1988).
 
 A.
 
 20
 Howsoever convoluted the trustee's argument may be, we are persuaded that the determinative question, here, as it was before the district court, is whether executing a personal guarantee to a lending institution, to enable the debtor to obtain additional credit which it would not otherwise have been accorded, qualifies as providing "money or money's worth in goods, services or new credit" within the meaning of section 547(a)(2), such that a contemporaneous exchange for new value took place as required by section 547(c)(1). We note the finding of contemporaneous exchange has not been challenged. The resolution of this appeal depends solely on whether appellee's guarantee constitutes new value. The bankruptcy judge and the district court decided that it did.
 
 B.
 
 21
 We affirm the district court's judgment essentially for the reasons stated by it:
 
 
 22
 I agree with Judge Twardowski's determination that, since [appellee's] personal guarantee to the bank was an essential prerequisite to the bank's willingness to lend $200,000 to the partnership, [appellee] should be regarded as having provided either "services" or "credit" to the partnership. See In re: Sider Ventures & Services Corp., 33 B.R. 708 (Bankr.S.D.N.Y.1983). It is therefore unnecessary to consider the (c)(4) issue.
 
 
 23
 App. at 505.
 
 
 24
 We reject the trustee's argument that appellee's guarantee is not "new value" as defined by Sec. 547(a)(2) because debtor's estate was not enhanced by the guarantee and was in fact depleted by payment to appellee. We are unable to accept the major premise of the trustee's argument which requires us to fracture this transaction into three separate, distinct and unrelated sub-transactions: first, the loan from Salween to debtor and the concurrent debt owed by debtor to Salween; second, appellee's guarantee to Salween and the preferential payment by debtor to appellee; and third, partial repayment of debtor's loan by appellee to Salween. The trustee argues that none of these sub-transactions constituted new value or even benefit from appellee to debtor. It parses each sub-transaction to show that in each phase of the transaction the debtor gained nothing from appellee and even lost value: in the first sub-transaction debtor received benefit from Salween but not from appellee; in the next sub-transaction Salween received the benefit of increased collateral, and debtor's estate was depleted; and the third sub-transaction occurred post-petition and therefore need not be considered by the court.
 
 C.
 
 25
 Because we decline to parse the transaction in this unconventional manner, the trustee's argument collapses. The argument fails to recognize the brute fact of financial life in this transaction, to wit, Salween would not have lent the money to the debtor had appellee not provided a personal guarantee. The debtor was in a better position after the transaction because it had increased cash-flow. The particular guarantee from the appellee that increased the necessary cash-flow constituted new value to the debtor. Debtor's balance sheet was changed after the transaction, but the debtor's estate was not depleted as erroneously urged by the trustee. The debtor acquired $200,000 in cash from Salween with a concurrent $200,000 debt. The debtor paid appellees each $33,000 but with the payment was a concurrent retirement of debt in a like amount. Before the payment, the debtor's obligation to the appellee was a balance sheet entry of a liability; after payment, to be sure, an asset of $33,000 was depleted, but the liability of $33,000 also disappeared.
 
 
 26
 We also reject trustee's assertion that a guarantee is analogous to a forbearance, which has been found not to constitute new value. See In re Duffy, 3 B.R. 263 (Bankr.S.D.N.Y.1980); In re White River Corp., 50 B.R. 403 (Bankr.D.Colo.1985). The appellee here did much more than forebear from taking collection against the debtor. Appellee made the loan from Salween possible by personally guaranteeing a loan for a company he knew had financial problems. Salween Financial would not have made the otherwise unsecured loan to the debtor but for the guarantee by appellee; conversely the debtor would not have received an infusion of $200,000 new working capital but for the guarantee by appellee. Accordingly, we are satisfied that what R.K. Mahajan and S.S. Mahajan, the limited partners, contributed to the debtor, in the form of a personal guarantee to Salween Financial, was new value.
 
 D.
 
 27
 We do not agree that with Trustee's position that In re: Bellanca Aircraft Corp., 56 B.R. 339 (Bankr.D.Minn.1985), aff'd in relevant part, 850 F.2d 1275 (8th Cir.1988) compels us to hold that the making of a guarantee cannot constitute new value. Rather, like Bankruptcy Judge Twardowski and Chief Judge Fullam, we are satisfied that the analysis set forth In re: Sider Ventures & Servs. Corp., applies to the instant case:
 
 
 28
 [T]he guarantor argues that the Bank's new loans to the debtor result in the guarantor giving new value to the debtor, at least when the Bank is undersecured, because of the increase in the guarantor's actual exposure. Here it was stipulated that the Bank would not have made the additional $200,000 in loans to Sider but for the Lewo and J L guarantees. J L gave new value in that it caused the Bank to provide new money to Sider; it provided money's worth in the form of a service to wit, acting as guarantor; and finally it gave money's worth in the form of new credit to Sider by virtue of the increase in the guarantee obligation....
 
 
 29
 It cannot be disputed that the estate was enhanced to the extent of the $200,000 by virtue of the additional loans. Elemental fairness requires that guarantors be treated consistently so that if they are charged with the burden of the principal debtor's payments to the creditor they can assert those same transactions to their benefit for the purpose of establishing new value in an appropriate case.
 
 
 30
 33 B.R. 708, 712 (Bankr.S.D.N.Y.1983), aff'd, 47 B.R. 406 (D.C.N.Y.1985).
 
 
 31
 Finally, we reject Trustee's argument that the value of the guarantee was too indeterminate in relation to the money received to satisfy section 547(c)(1). See In re Finelli Jewelry Co., 79 B.R. 521 (Bankr.D.R.I.1987). The guarantee exposed appellee to a potential liability of $200,000 and an actual liability of $41,000. The debtor received $200,000 in cash as a result of appellee's guarantee. The "new value" transferred by appellee was sufficient in relation to the $33,000 transferred by debtor to appellee to satisfy the requirements of section 547(c)(1).
 
 V.
 
 32
 Because we find that appellee's preferential transfer satisfies the exception set forth in section 547(c)(1), we do not reach the issue of whether the transfer satisfies the exception set forth in section 547(c)(4).
 
 
 33
 Finally, we also are satisfied with the district court's treatment of the Pennsylvania statute governing limited partnerships. 59 Pa.C.S.A. Sec. 527 (repealed 1988). See District Court Opinion, App. at 505-07.
 
 VI.
 
 34
 We have considered all the contentions and authorities presented by the appellant. The judgments of the district court at Nos. 89-1976, 1989 WL 140395 and 89-1972, 1989 WL 140394 will be affirmed in all respects.
 
 
 35
 COWEN, Circuit Judge, dissenting.
 
 
 36
 Although I agree with the majority that the $33,333 payments from the partnership, Kumar Bavishi & Associates (hereinafter "the debtor"), to the Appellees, R.K. Mahajan and his brother S.S. Mahajan, were preferential transfers under the Bankruptcy Code ("the Code"), 11 U.S.C. Sec. 547(b) (1982), I do not agree that the Appellees have established a section 547(c)(1), or even a section 547(c)(4), defense because I am unconvinced that any "new value," as required by those provisions, has been advanced by the Appellees. Moreover, I also believe that the district court erred in concluding, as a matter of law, that under Pennsylvania's Uniform Limited Partnership Act, 59 Pa.Cons.Stat.Ann. Sec. 527 (Purdon Supp.1989) (now repealed), there was no payment made between the debtor and the Appellees.[1]
 
 I.
 
 37
 Initially, I begin with the premise that the $33,333 payment made by the debtor to the Appellee in April 1984 was a preferential transfer. For the same reasons that the majority gives, I am not persuaded by the Appellee's argument that this payment was either not a transfer of an interest in the debtor's property or that the loan from the lending institution, Salween Financial ("Salween"), was earmarked funds.
 
 
 38
 Thus, in order for the Appellee to avoid the Trustee's preference action, he must establish a defense under section 547(c) of the Code. The Appellee claims a defense under both sections 547(c)(1) and (c)(4) of the Code. Both of these sections require that the creditor advance new value to the debtor in order to insulate a preferential transfer from the Trustee's avoidance power. I find that neither the simple giving of a guarantee nor the subsequent honoring of that guarantee constitutes new value to the debtor under the facts and the proof in this case.
 
 
 39
 The Code defines "new value" as "money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation...." 11 U.S.C. Sec. 547(a)(2). Relying upon dicta in a footnote from Eisenberg v. J.L. Int'l, Ltd. (In re Sider Ventures & Servs. Corp.), 33 B.R. 708, 712 n. 2 (Bankr.S.D.N.Y.1983), aff'd on other grounds, 47 B.R. 406 (D.C.N.Y.1985),[2] the majority finds that the Appellee's guarantee of Salween's $200,000 loan to the debtor satisfies the Code's definition of new value. Adopting the analysis of the Sider Ventures court, the majority quotes the following portion of that opinion: "J.L. [the creditor] gave new value in that it caused the Bank to provide new money to Sider [the debtor]; it provided money's worth in the form of a service to wit, acting as guarantor; and finally it gave money's worth in the form of new credit to Sider by virtue of the increase in the guarantee obligation." Id.[3]
 
 
 40
 I believe that the mere giving of a guarantee cannot be logically viewed as the advance of new credit to the debtor. Alternatively, I find that the Appellee has simply failed to prove what the value, if any, of the guarantor service was if the guarantee is viewed as having independent value. First, viewing a guarantee as new credit simply leads to absurd results. If the Appellee's guarantee is viewed as advancing $200,000 worth of new credit, i.e., the value of the loan, then the other five or six guarantors, as well as Salween, would also have a potential $200,000 new value defense under section 547(c), thus totalling either $1,400,000 or $1,600,000 worth of new credit that could be potentially claimed against the debtor's estate on the basis of the $200,000 loan. On the other hand, if the Appellee's guarantee is viewed as advancing the Appellee's ultimate pro rata share of the obligation, i.e., a $41,000 claim of new credit against the debtor's estate, then the other guarantors who also honored their guarantees collectively have a $159,000 potential new credit claim and Salween potentially a $200,000 claim. Again, this leads to a total of $400,000 worth of new credit that could be claimed against the debtor's estate based on a $200,000 loan.
 
 
 41
 A simple example should show the untenability of viewing the simple act of making a guarantee as advancing new credit to the debtor. Suppose in our case that the debtor had an antecedent unsecured debt to Salween of $300,000. Suppose also that before the actual loan transaction that occurred in this case, but during the preference period, the debtor had repaid to Salween $200,000 of that antecedent loan. Then, after both the $200,000 loan transaction occurs and the bankruptcy petition is filed, Salween would have a section 547(c)(4) defense to this earlier $200,000 preferential transfer based on its advance of $200,000 to the debtor in April 1984. However, under the majority's analysis, both Mahajan brothers would also have a new credit offset of $33,333 under Section 547(c)(1). Thus, if the guarantee is viewed itself as advancing new credit, the result in this hypothetical situation is that $266,666 of new credit has been advanced to the debtor, for purposes of section 547(c), on the basis of a mere $200,000 loan to the debtor. A legal principle that has such absurd and unfair consequences cannot stand. Obviously only $200,000 of new credit was advanced to the debtor as part of the April 1984 transaction and this new credit was advanced by Salween and only by Salween.
 
 
 42
 Alternatively, the majority might be arguing that the guarantee has independent value as money's worth of service to the debtor, over and above the amount of new credit advanced by Salween. This value might be analogized to the premium one might pay to an insurance company to insure the repayment of the insured's debt to the bank. The calculation of this value would have to involve both the potential liability of $200,000 on the guarantee and the expected liability of somewhere between $33,333 and $28,500,[4] discounted by the possibility of the debtor defaulting.[5] Yet the record before us reveals no evidence as to the money's worth in value of the Appellee's alleged guarantor service. Although the majority waves its hands at what this actual value was,[6] I am simply not convinced that this value is not either too indeterminate or speculative to serve as new value in this context, or, assuming such guarantor service does have some value, that such value would be equivalent to $33,333.
 
 
 43
 At any rate, this Court's recent decision in In re Spada, 903 F.2d 971 (3d Cir.1990), holds "that a determination [by the bankruptcy court] of how much 'new value' was involved in the exchange is mandated" by the statute. Id. at 976 (emphasis added). Such a determination is necessary because the court must compare how much new value is given to the amount of the preferential transfer with the creditor:
 
 
 44
 [A]fter reaching th[e] conclusion [that a reduction in interest rate and a delay in principal repayment on several unsecured loans was new value], the court failed to establish the value of the new consideration, and to compare it to the value of the security interest conveyed [by the debtor to the creditor]. Apparently the bankruptcy court concluded that once the creditor demonstrates that new value of any amount was conveyed to the debtor the entire transfer falls within the section 547(c)(1) exception to the preferential transfer rule. This implicit conclusion is contrary to both the language of the statute and the policy behind the preferential transfer rule. The plain language of section 547(c)(1) expressly states that a trustee is unable to avoid a transfer "to the extent that such transfer was intended ... to be contemporaneous exchange for new value given to the debtor."
 
 
 45
 Id. at 975. See also Jet Florida, Inc. v. American Airlines, Inc. (In re Jet Florida Sys., Inc.), 861 F.2d 1555, 1558-59 (11th Cir.1988).[7]
 
 
 46
 In this case the bankruptcy court made no finding as to the value of the Appellee's alleged guarantor service to the debtor. Consequently, the court made no comparison of the relative values of the service and the preferential transfer. In fact, from the record before us it is clear that the Appellee utterly failed to offer proof as to the value of the alleged guarantor service provided to the debtor. Since I "conclude that a creditor must, as a part of its section 547(c)(1) affirmative defense, prove the specific valuation of the 'money or money's worth in goods, services, or new credit' that the debtor received as 'new value' in the contemporaneous exchange," Jet Florida, 861 F.2d at 1559, I find, in keeping with this circuit's precedent, that the Appellee has not proven a section 547(c)(1) defense in this case.[8]II.
 
 
 47
 The Appellee also claims a defense to the $33,000 transfer under section 547(c)(4) of the Code. This section reads in relevant part:
 
 
 48
 (c) The trustee may not avoid under this section a transfer--
 
 
 49
 . . . . .
 
 
 50
 (4) to or for the benefit of a creditor; to the extent that, after such transfer; such creditor gave new value to or for the benefit of the debtor....
 
 
 51
 11 U.S.C. Sec. 547(c)(4). Thus, as with section 547(c)(1) the creditor must have advanced the debtor "new value," only under this exception the "new value" need not be contemporaneous with the preferential transfer but could occur sometime after the transfer.
 
 
 52
 The Appellee argues that even if his guarantee at the time of the preferential transfer did not constitute "new value," once he was called upon to pay Salween his pro rata share of that obligation, i.e. $41,000, that payment constituted "new value" to the debtor. See Bergquist v. Anderson-Greenwood Aviation, Corp. (In re Bellanca Aircraft Corp.), 850 F.2d 1275, 1281 n. 12 (8th Cir.1988). I disagree.
 
 
 53
 "In determining whether a creditor has extended 'new value,' the focus is not on the harm or detriment to the creditor, but rather the issue before the Court is whether there is an augmentation or material benefit to the debtor's estate." Wolinsky v. Central Vermont Teachers Credit Union (In re Ford), 98 B.R. 669, 682 (Bankr.D.Vt.1989). See also Charisma Inv. Co., N.V. v. Air Florida Sys., Inc. (In re Jet Florida Sys., Inc.), 68 B.R. 596, 602 (S.D.Fla.1986), aff'd per curiam, 841 F.2d 1082 (11th Cir.1988). Therefore, the fact that the Appellee suffered a loss when he was forced to honor his guarantee is not relevant to our determination here; instead, we must look to whether the debtor's estate was augmented or materially benefitted by the honoring of the guarantee. I cannot see how it was.
 
 
 54
 Before the guarantees were honored, the debtor had received $200,000 of new value from Salween and incurred a corresponding increase in its debt of $200,000. After the guarantees were paid, the debtor's estate did not increase in value nor was it benefitted in any way. Isolating this transaction for purposes of our analytical discussion, after the guarantees were paid the estate still retained the $200,000 in new value from Salween and still had a debt of a corresponding amount.[9] No augmentation of the estate or benefit accrued to the estate because the guarantors were forced to pay. The assets and liabilities of the estate remained exactly the same. All that changed was possibly the identity of the party who might ultimately receive repayment of some of the debt.[10]
 
 III.
 
 55
 The Trustee also appeals the order of the district court to the extent that it denied the Trustee's state cause of action under Pennsylvania's Uniform Limited Partnership Act ("the Act"), 59 Pa.Cons.Stat.Ann. Sec. 527 (Purdon Supp.1989) (now repealed). Section 527 of the Act reads:
 
 
 56
 (a) General rule.--A limited partner also may loan money to and transact other business with the partnership, and, unless he is also a general partner, receive on account of resulting claims against the partnership, with general creditors, a pro rata share of the assets. No limited partner shall in respect to any such claim:
 
 
 57
 (1) Receive or hold as collateral security any partnership property.
 
 
 58
 (2) Receive from a general partner or the partnership any payment, conveyance, or release from liability, if at the time the assets of the partnership are not sufficient to discharge partnership liabilities to persons not claiming as general or limited partners.
 
 
 59
 (b) Effect of violation.--The receiving of collateral security, or a payment, conveyance, or release in violation of the provisions of subsection (a) is a fraud on the creditors of the partnership.
 
 
 60
 59 Pa.Cons.Stat.Ann. Sec. 527. The Trustee argues that the Appellee is clearly a limited partner who received a payment of $33,333 from the debtor. Furthermore, the Trustee contends that its expert witness adequately established at trial that the debtor was insolvent before April 1984 when the payment was made. The bankruptcy court did not address the Trustee's state fraudulent conveyance claim under section 527. Yet, the district court found, as a matter of law, that there had been no "payment" under subsection (a)(2) of the Act because of its finding of a contemporaneous exchange, in April 1984, of value-for-value under the Code.
 
 
 61
 Since I have found that the Appellee has simply not established any contemporaneous exchange of value involved in the April 1984 transaction, see supra section I, I believe that the district court's legal conclusion is faulty. However, the Appellee argues that even if the district court's reasoning is wrong, the Trustee failed to prove the insolvency of the debtor as of April 1984, because the Trustee's expert, in testifying as to the debtor's liabilities, failed to subtract the debts owed to the general partner, as well as other limited partners, as required by the statute. I am persuaded by the Appellee's argument to the extent that from the record before us reasonable minds could differ on whether the Trustee carried his burden of proof that the debtor was actually insolvent in April 1984 for purposes of the Act.[11] Because the bankruptcy court did not make any factual findings on this issue, I would vacate the district court's order as to this cause of action, and remand with directions to remand the case to the bankruptcy court for a finding as to whether the debtor was insolvent at the time of the $33,333 payment.[12]
 
 IV.
 
 62
 In conclusion, I find that the $33,333 transfers to the Mahajan brothers were preferences to which they have not established a legitimate defense under section 547(c). Thus, I would reverse the judgment of the district court on the Trustee's Bankruptcy Code cause of action. In addition, I would vacate the judgment for the Mahajans on the Trustee's state fraud claim under the Limited Partnership Act, and remand the case to the district court for a finding by the bankruptcy court as to whether the debtor was insolvent at the time of the $33,333 payments.
 
 
 
 [1]
 For convenience, I will henceforth adopt the majority's convention of referring to both of the Mahajan brothers as "the Appellee."
 
 
 [2]
 My research uncovered no court which has held unequivocally that a guarantee alone is "new value" under section 547(a)(2). However, one bankruptcy court has apparently concluded just the opposite: "it should be noted that a guarantee is nothing more than a contractual obligation evidenced by a writing and does not, alone, satisfy the definitional requirements set forth in section 547(a)(2)." Bergquist v. Anderson-Greenwood Aviation, Corp. (In re Bellanca Aircraft Corp.), 56 B.R. 339, 394 (Bankr.D.Minn.1985), aff'd in part and remanded in part, 850 F.2d 1275 (8th Cir.1988) (while the appellate court cited the Sider Ventures case approvingly, it was in the context of the appellate court's broader holding that a creditor who both guarantees payment of a debt and subsequently honors that guarantee advances new value to the debtor)
 
 
 [3]
 I find it unclear from the majority's opinion exactly which section 547(a)(2) category is thought to include the Appellee's guarantee. The majority affirmed the district court's judgment for the reasons stated by it: "since [Appellee's] personal guarantee to the bank was an essential prerequisite to the bank's willingness to lend $200,000 to the partnership, [Appellee] should be regarded as having provided either 'services' or 'credit' to the partnership." App. at 505 (emphasis added). As quoted in the text, the Sider Ventures court found that the guarantee in that case was both a service and new credit to the debtor. The majority writes that the court's analysis in Sider Ventures "applies to this case." Thus, I am not sure whether the majority is holding that the Appellee's guarantee in the case sub judice was money's worth in service to the debtor, or constituted new credit, or both. At any rate, I believe that a careful analysis of this case reveals that the Appellee failed to prove that its guarantee constituted either money's worth in service or new credit to the debtor
 
 
 [4]
 The expected liability was between $33,333 and $28,500 since the record is unclear as to whether six or seven limited partners gave guarantees for the loan before the preferential transfers were made. See App. at 185-86, 189, 430, 230, 237
 
 
 [5]
 Of course, for this analysis, the actual loss incurred by the Appellee is irrelevant. If the majority is claiming that the Appellee gave money's worth in service to the debtor in a contemporaneous exchange for $33,333, then the value of that service must be judged at the time of the exchange not at the time of the loss
 
 
 [6]
 The majority writes: "The guarantee exposed appellee to a potential liability of $200,000 and an actual liability of $41,000. The debtor received $200,000 in cash as a result of appellee's guarantee. The 'new value' transferred by appellee was sufficient in relation to the $33,333 transferred by debtor to appellee to satisfy the requirements of section 547(c)(1)." See supra, at 946
 
 
 [7]
 The Jet Florida court explained:
 Construing the whole of section 547 ... we conclude that Congress was clear in requiring that a party seeking the shelter of section 547(c)(1) must prove the specific measure of the new value given to the debtor in the exchange.
 Section 547(c)(1) protects transfers only "to the extent" the transfer was a contemporaneous exchange for new value. A court must measure the value given to the creditor and the new value given to the debtor in determining the extent to which the trustee may void a contemporaneous exchange. This provision indicates that a creditor seeking the protection of section 547(c)(1) must prove with specificity the new value given to the debtor.
 Furthermore, the applicable statutory definition of "new value" that Congress provided in section 547(a)(2) expressly requires that the creditor prove the specific valuation of the "new value." The relevant language for the purposes of deciding this case is the section's definition of "new value" as "money or money's worth in goods, services, or new credit." This language necessarily requires a specific dollar valuation of the "new value"--the "money's worth"--that the debtor received in the exchange.
 Jet Florida, 861 F.2d at 1558-59 (footnotes omitted). The Spada panel noted that it agreed with the Eleventh Circuit's "reasoning in its entirety." Spada, at 977.
 
 
 [8]
 The use of a section 547(c)(1) defense in our situation is really quite troubling for another reason. As one commentator has explained: "The sparse legislative history of section 547(c)(1) indicates that its purpose was to protect exchanges of property that might literally be considered credit transactions when the transactions were clearly intended to be contemporaneous transfers." 4 Collier on Bankruptcy Sec. 547.09, at 547-42 & n. 2 (15th ed. 1990) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 178 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, as follows: "The exception is a simple one, excepting a transfer that is really not on account of an antecedent debt.... No doubt a purchase by the debtor of goods or services with a check, if deemed to be on credit by state law, would be insulated by this exception. Though strictly speaking the transaction may be a credit transaction because the seller does not receive payment until the check is cleared through the debtor's bank, it is generally considered and intended to be a contemporaneous transaction, and assuming the check is promptly deposited and cleared, is in fact substantially contemporaneous."). See also H.R.Rep. No. 595, 95th Cong., 2d Sess. 373, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 6329 ("Normally, a check is a credit transaction. However, for the purposes of this paragraph, a transfer involving a check is considered to be 'intended to be a contemporaneous exchange,' and if the check is presented for payment in the normal course of affairs ..., that will amount to a transfer that is 'in fact substantially contemporaneous.' "). In the case sub judice there is no problem with the way that the debtor is paying for the Appellee's alleged services such that it makes the transaction falsely appear like a credit transaction under state law. In fact, the Appellee is not even a regular supplier of goods to the debtor. Rather what is really going on here is that one intimate creditor, is getting a transfer within the preference period from the debtor on account of an antecedent debt, precisely the type of transaction that a trustee should be able to avoid and precisely the type of transaction that (c)(1) is not intended to insulate
 In addition, the majority is quick to allow the Mahajan brothers a defense to their preferential receipts. But what if all the guarantors had received a preferential transfer equal to their pro rata share of the obligation and thus none of the $200,000 loan was used by the debtor as working capital? Would the majority be as quick in granting all of these intimate creditors a(c)(1) defense under those facts? Or is the majority's holding limited to a certain amount of the loan being used by the debtor for working capital, as opposed to paying off the antecedent debts of limited partners? If so, then how much is necessary? In this case one third of the loan went to the Mahajan brothers.
 
 
 [9]
 Moreover, by the time that the guarantees were honored the debtor had already petitioned for bankruptcy and no payment of an unsecured debt could be demanded. This raises another issue that troubles me, although I do not rely upon it for my analysis. Courts are split on whether postpetition advances of new value qualify under section 547(c)(4). Compare In re Thomas W. Garland, Inc., 28 B.R. 87 (Bankr.E.D.Mo.1983) (allowing postpetition advances to qualify) with Bergquist v. Anderson-Greenwood Aviation, Corp. (In re Bellanca Aircraft Corp.), 850 F.2d 1275, 1284-85 (8th Cir.1988) (disallowing (c)(4) protection to postpetition advances). An emerging trend is developing to deny protection to postpetition advances. Wolinsky v. Central Vermont Teachers Credit Union (In re Ford), 98 B.R. 669, 683 (Bankr.D.Vt.1989). Although several reasons are given for this denial, at least two are applicable here. The first reason is statutory, relying on the provision in section 547(c)(1) that states that the creditor must give new value to or for the benefit of the debtor. Such wording has led some courts to conclude that Congress meant to exclude postpetition advances since:
 Upon filing of a petition for relief, an estate is created consisting of all the assets and properties of the debtor. Such estate is a separate and distinct entity from the debtor. Moreover, although the debtor, as debtor in possession, is bestowed with nearly all of the rights and powers and is required to perform most of the functions and duties of a trustee, including the operation of the debtor's business, obligations incurred and assets received postpetition become the obligations and assets of the estate. Strictly applying the terms of section 547(c)(4), therefore, it becomes clear that postpetition advances of new value ostensibly to or for the benefit of the debtor should instead be allocated to the debtor's estate.
 Bellanca Aircraft, 56 B.R. 339, 396 (Bankr.D.Minn.1985), aff'd in part and remanded in part on other grounds, 850 F.2d 1275 (8th Cir.1988) (citations omitted). In addition, there is no mutuality of debt in this situation. In re Ford, 98 B.R. at 683.
 
 
 [10]
 Additionally, the facts of this case are far removed from the rationale behind section 547(c)(4). As this Court has explained:
 Section 547(c)(4) has two interrelated purposes. First, the section is designed "to encourage trade creditors to continue dealing with troubled businesses." In re Gold Coast Seed Co., 30 B.R. 551, 553 (9th Cir. BAP 1983). In the ordinary course of business, suppliers provide goods to businesses on credit. The financial pressure that would result if creditors were to force an ailing company to pay for supplies upfront could turn many a troubled company into a bankrupt one. By allowing creditors to rely on payments of back debt in shipping new goods, section 547(c)(4) serves the purpose of avoiding unnecessary bankruptcies.
 Second, section 547(c)(4) is designed to "treat fairly a creditor who has replenished the estate after having received a preference." In re Almarc Mfg., Inc., 62 B.R. 684, 688 (Bankr.N.D.Ill.1986). See also In re American International Airways, Inc., 68 B.R. 326, 337 (Bankr.E.D.Pa.1986) (Section 547(c)(4) "protects creditors who deal with financially unstable businesses and reasonably rely on their payments as a consideration for providing these future services.").
 New York City Shoes v. Bentley Int'l, Inc. (In re New York Shoes, Inc.), 880 F.2d 679, 680-81 (3d Cir.1989). The Appellee in this case was not a supplier or trade creditor of the debtor, and therefore was not relying on the debtor to pay past debts in order to ship new goods or provide new services to the debtor. Rather, the Appellee was a limited partner in the debtor. Applying the section 547(c)(4) exception to this case in no way serves the Code's purpose of encouraging trade creditors to continue dealing with troubled businesses in order to prevent bankruptcies. In fact, I would argue that applying the defense here would encourage just the opposite.
 
 
 [11]
 I note that this does not effect my conclusion that the Trustee should prevail on his Code action. The definition of insolvency under the Code does not involve the subtraction of partnership liabilities as does the Act. The Appellee makes no argument that the debtor was solvent for Code purposes at the time of the preferential transfers and thus the 90 day presumption of insolvency is applicable
 
 
 [12]
 I have reflected on the Appellee's other arguments as to why we should hold that the Trustee has not established a prima facie violation of section 527, including the earmarking and nontransfer of an interest in property arguments made in conjunction with the preference issue above, and find them unpersuasive