### In re DISCOVERY ZONE, INC., et al., Debtors.

Montague S. Claybrook, Chapter 7 Trustee of Discovery Zone, Inc., DZ Party, Inc., Discovery Zone (Puerto Rico), Inc. and Discovery Zone Licensing, Inc., Plaintiff,

v.

**Pizza Hut, Inc., Defendant.**

**Bankruptcy No. 99–0941(PJW). Adversary No. 01–1491(PJW).**

United States Bankruptcy Court, D. Delaware.

Oct. 3, 2003.

---

Michael DeBaecke, Blank Rome LLP, Wilmington, DE, Alan C. Gershenson, Blank Rome LLP, Philadelphia, PA, for Montague S. Claybrook, Chapter 7 Trustee.

William P. Bowden, Joseph C. Handlon, Ashby & Geddes, Wilmington, DE, Guy S. Neal, Sidley, Austin, Brown & Wood LLP, Washington, DC, for Pizza Hut, Inc.

### MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to the motion for summary judgment filed by defendant Pizza Hut, Inc. ("PHI") (Doc. # 11). By its complaint, Montague S. Claybrook ("Trustee"), Chapter 7 trustee of Discovery Zone, Inc., DZ Party, Inc., Discovery

Zone (Puerto Rico), Inc. and Discovery Zone Licensing, Inc. (collectively, "Debtor") seeks to recover alleged preferential transfers made by the Debtor to PHI. For the reasons discussed below, the Court will grant PHI's motion.

## BACKGROUND

On April 30, 1997 the Debtor and PHI entered into a license agreement and thereafter executed various supplemental schedules to the agreement (collectively, the "Agreement"). The Agreement authorized the Debtor to use particular licensed concepts at specified licensed locations. The licensed concepts were for the use of some of PHI's trademarks in connection with a limited variety of food products prepared by the Debtor according to PHI's propriety recipes and sold at Debtor's locations. The Debtor was obligated to pay PHI license fees for each licensed location and termination fees in the event the Debtor voluntarily terminated operations prior to the termination dates specified in the Agreement.

On February 11 and February 26, 1999 PHI received payments from the Debtor in the amounts of $55,696.21 and $109,139.91 respectively. These payments were made for license fees owed under the Agreement and were paid during the ninety day period before the Debtor filed for bankruptcy ("Preference Period"). After PHI received the two payments totaling $164,836.12 the Debtor continued to use PHI's trademarks and proprietary food products at locations specified in the Agreement. Although additional license fees accrued during the Preference Period, no additional payments were made by the Debtor.

The Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq.,[1] on April 20, 1999 ("Petition Date"). On May 23, 2000 the case was converted to a Chapter 7 case and the Trustee was appointed.

On March 15, 2000 in a Stipulated Order entered in the Debtor's chapter case, the parties stipulated that PHI had an unsecured pre-petition claim against the Debtor in an amount not less than $1,633,241, with $1,375,000 constituting outstanding termination fees and $258,241 constituting license fees that accrued prior to the Petition Date. Furthermore, the Stipulated Order stated that, pursuant to §§ 503 and 507, PHI had a valid and allowable Chapter 11 administrative expense claim against the Debtor in the amount of $97,592.68.

The Trustee initiated an adversary proceeding against PHI pursuant to §§ 547(b)[2] and 550 to avoid and recover

---

1. Hereinafter, unless otherwise indicated, all references to "§ ___" are to a section of the Bankruptcy Code, 11 U.S.C. § 101 et seq.

2. 11 U.S.C. § 547(b) provides:
   (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
   　(1) to or for the benefit of a creditor;
   　(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   　(3) made while the debtor was insolvent;
   　(4) made—

(A) on or within 90 days before the date of the filing of the petition; or
(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
　(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. § 547(b) (1993).

the $164,836.12 of payments made to PHI during the Preference Period. PHI argues that it is entitled to summary judgment because after the subject transfers it gave new value to or for the benefit of the Debtor, thereby creating the defense provided by § 547(c)(4).[3] As a part of the briefing on PHI's motion, the parties executed a "Stipulation of Undisputed Material Facts As To Which There Is No Genuine Issue" (Doc. #8). In addition to furnishing some of the facts recited above, paragraph 6 of that stipulation states that "for the months of March and April 1999 the amount owed by the Debtor to PHI for unpaid License Fees was approximately $164,800."

## DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure applies to contested matters in a bankruptcy proceeding pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure.[4] According to Rule 56(c)

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

The moving party initially bears the burden of demonstrating that there is an absence of a genuine issue of material fact and the court will reach this determination after viewing the facts in the light most favorable to the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to "establish the existence of an essential element to that party's case." *Id.* at 322, 106 S.Ct. 2548. A failure of proof by the nonmoving party will entitle the movant to judgment as a matter of law. *Id.; see also In re Ameriserve Food Distrib., Inc.*, 2003 WL 21981543, at *1 (Bankr.D.Del.2003) (citing *Carter v. McGrady*, 292 F.3d 152, 157 n. 2 (3d Cir.2002)).

There is no genuine issue as to any material fact involved here. The amount of the license fee obligation owed by the Debtor to PHI after the transfers and prior to the Petition Date is stipulated as $164,800. The only question is whether that $164,800 reflects new value as contemplated by § 547(c)(4).

According to § 547(g) the trustee bears the burden of establishing a preference under § 547(b) and "the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c)." The Third Circuit Court of Appeals, in *New York City Shoes, Inc. v. Bentley International*, set forth three requirements under § 547(c)(4) for a transfer to be excepted: (1) the transfer must be otherwise voidable as a preference under § 547(b); (2) "new value" must be advanced after the preferential transfer and it must be unsecured; and (3) the creditor must not have been fully compen-

---

**3.** Section 547(c)(4) provides:
> (c) The trustee may not avoid under this section a transfer—
> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
> (A) not secured by an otherwise unavoidable security interest; and

> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;
> 11 U.S.C. § 547(c)(4).

**4.** Rule 7056 states "Rule 56 F.R. Civ. P. applies in adversary proceedings." Fed. R. Bankr.P. 7056.

sated by the debtor as of the date the debtor filed the bankruptcy petition. 880 F.2d 679, 680 (3d Cir.1989); *In re Contempri Homes,* 269 B.R. 124, 130 (Bankr. M.D.Pa.2001) (citing *id.*). If the creditor satisfies these elements, a setoff is permitted in the amount of the new value and the recoverable amount is reduced. *See Ross v. Phila. Housing Auth. (In re Ross),* No. 97–0063, 1997 WL 331830, at *4 (Bankr. E.D.Pa. June 10, 1997) (citing *N.Y. City Shoes,* 880 F.2d at 680).

Section 547(c)(4) is supported by two policy considerations. First, the rule encourages third parties to continue doing business with the debtor by limiting their risk of loss and encouraging the retention of the payments they received. *In re CCG 1355, Inc.,* 276 B.R. 377, 386 n. 20 (Bankr. D.N.J.2002) (citing *In re Micro Innovations Corp.,* 185 F.3d 329, 332 (5th Cir. 1999)). Furthermore, the continued business transactions might even help prevent the debtor from ever filing bankruptcy. *See id.* Second, § 547(c)(4) codifies the concept that the estate, and consequently the other creditors, are not harmed by the transfers. *Id.* If the transfer is within this exception, it was made in exchange for new value and the new value augments the estate in the same proportion as the value of the transfer; therefore, the estate does not suffer any injury. *Id.*

In this case, the only issue to be resolved is the second element of § 547(c)(4)—the advancement of "new value". New value is defined in § 547(a)(2) as follows:

> "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not

include an obligation substituted for an existing obligation.

*See also Ross,* 1997 WL 331830, at *4. Section 547(a)(2) has been construed broadly by the Third Circuit Court of Appeals based on the language of the "House and Senate reports 'to codify the usual rules of consideration.'" *Creditors' Comm. v. Spada (In re Spada),* 903 F.2d 971, 971 (3d Cir.1990).

On the issue here, I find persuasive the decision of the Bankruptcy Court for the Eastern District of Pennsylvania in *Ross v. Philadelphia Housing Authority,* 1997 WL 331830, at *3–*7. There the court found that because the creditor allowed the debtor to remain in the dwelling unit after she fell behind on rent, the creditor had conveyed new value. *Id.* at *4. The court made an objective determination and did not consider the creditor's intention to convey new value, but only whether new value was **actually** conveyed. *Id.; see also Almarc Mfg., Inc. v. Paisano Auto. Liquids (In re Almarc Mfg.),* 62 B.R. 684, 688 n. 7 (Bankr.N.D.Ill.1986) ("the creditor's state of mind in making the postpreferential advance is absolutely irrelevant to the right of set-off"). The court declined to follow *In re Duffy,* 3 B.R. 263 (Bankr.S.D.N.Y.1980), where the decision to forbear from repossession was found not to be new value. *Id.* at 266. The court distinguished that case based on the Third Circuit's interpretation of § 547(a)(2) that "new value refers to any consideration sufficient to support a contract." *Ross,* 1997 WL 331830, at *6. *Compare Duffy,* 3 B.R. 263, *with In re Kumar Bavishi & Assoc.,* 906 F.2d 942 (3d Cir.1990). As a result, in *Ross,* the court found the creditor conveyed new value and was entitled to offset the preferential payments by the amount of the new value conveyed. *Id.* at *7; *see also Kumar Bavishi,* 906 F.2d at 946 (finding that a per-

sonal guarantee was new value where the creditor would not have provided additional funds without the guarantee); *Lease–A–Fleet, Inc. v. Morse Operations, Inc. (In re Lease–A–Fleet, Inc.),* 141 B.R. 853, 864 (Bankr.E.D.Pa.1992) (continuing supply of vehicles by a automobile lessor without payment constituted new value); *Data Tech. Indus. v. Ames (In re Data Tech Industries, Inc.),* No. 91–1110S, 1992 WL 37500, at *3 (Bankr.E.D.Pa. Feb.21, 1992) (holding that employment services rendered after each payment constituted new value).

PHI contends that the continued use of its trademarks, products and proprietary recipes without paying the monthly license fees under the Agreement constitutes new value. The amount of that license fee obligation up to the Petition Date is stipulated to be $164,800. Even though the Debtor failed to make these payments, PHI permitted the Debtor to continue to use their propriety information. Similar to the creditor in *Ross,* I find that PHI conveyed new value to the debtor through continued use of "property." The amount of that new value is the $164,800 agreed upon amount of the license fee.

It is important to note that the parties stipulated that the $97,592.68 of license fees that accrued subsequent to the Petition Date constitute priority administrative expense claims. This is a clear acknowledgment by the Debtor of the benefit to the estate of the license rights which it utilized post-petition. It logically follows that the pre-petition $164,800 of license fees likewise reflect a "benefit" to the Debtor in the post transfer prepetition period. That benefit constitutes new value as contemplated by § 547(c)(4).

## CONCLUSION

For the reasons set forth above, PHI's summary judgment motion is granted. Al-though the $164,800 of new value does not fully set off the $164,836.12 of transfers, the difference is obviously *de minimus.*

## ORDER

For the reasons set forth in the Court's Memorandum Opinion of this date, defendant Pizza Hut, Inc.'s motion for summary judgment (Doc. # 11), is **GRANTED.**